ORDERED UNSEALED on 03/12/2025    s/ BreanneC

~~SEALED~~

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: '25 MJ1116 |
| Plaintiff, | |
| v. | COMPLAINT FOR VIOLATION OF |
| JERRICK ABUEG (1),<br>ERINJAY MACARAIG (2), | Title 18, U.S.C., Secs. 1349,<br>Conspiracy to Commit Mail and Wire<br>Fraud; Title 18 U.S.C., Secs.<br>1956(h), Conspiracy to Commit Money<br>Laundering, and Title 18, U.S.C.,<br>Secs. 981(a)(1)(C), 982(a)(2)(a),<br>and Title 28, U.S.C., Sec. 2461(c)<br>– Criminal Forfeiture |
| Defendants. | |

The undersigned complainant being duly sworn states:

At all times relevant to this Complaint:

**INTRODUCTION**

1. A **technical support scam**, or tech support scam, is a sophisticated fraud scheme where criminals claim to offer a legitimate technical support service. The criminals contact victims in a variety of ways, including through fake computer pop-ups resembling error messages or via fake "help lines" advertised on websites owned by the criminals. These criminals use social engineering and a variety of confidence tricks to persuade their victim that there are problems on their computer or mobile device, when there are no actual issues with the victim's device. They will often persuade the victim to pay to fix the fictitious "problems" that they claim to have found. Tech support

scams are often combined with other types of scams, such as a refund scam or a bank impersonation scam to extract additional funds from the victim.

2.     A **refund scam** is a sophisticated fraud scheme where criminals will use social engineering techniques first to gain the victim's trust, then to convince the victim that they have accidentally received an over-refund, a portion of which the victim is instructed to return. This often occurs through social engineering where the victim is told they are entitled to a small refund, for example, from a retailer for an alleged unauthorized charged. While pretending to process the refund, the victim is accidentally "over-refunded" money. The criminals will then instruct the victim to send the alleged over-refunded money through wire transfers, express mail delivery, or other cash equivalents to the criminals. In reality, the victim has not received any money, and the victim ends up sending their own money to the criminals.

3.     A **bank impersonation scam** is a fraud scheme where criminals pretend to be a bank employee for the purpose of directing the victim to transfer funds from out of the victim's bank account to the criminals. In some bank impersonation cases, the criminals inform the victim that his/her bank accounts have been compromised or identities have been stolen and direct the victim to transfer the victim's money elsewhere for safe keeping. The criminals then direct the victim to send funds to accounts controlled by the criminals or to purchase precious metals and to deliver that money to the criminals.

<u>**COUNT 1**</u>

**(Conspiracy to Commit Mail and Wire Fraud)**

**[18 U.S.C. § 1349]**

4.     Paragraphs 1 to 3 are re-alleged and incorporated herein.

5.     Beginning on a date unknown, but no later than March 2024, and continuing up to and including September 2024, within the Southern District of California, defendants JERRICK ABUEG and ERINJAY MACARAIG, together with each other and with others known and unknown, knowingly and intentionally conspired to commit the following offenses:

a. mail fraud, in violation of Title 18, United States Code, Section 1341;

b. wire fraud, in violation of Title 18, United States Code, Section 1343;

**MANNER AND MEANS**

6.     The objection of the conspiracy was carried out, and was to be carried out, in substance in the following manner:

7.     Members of the conspiracy operated a series of tech support, refund, and bank impersonation scams targeting elderly victims throughout the United States.

8.     Members of the conspiracy contacted putative victims through unsolicited communications, including pop-up ads and phone calls.

9.     After building trust with a victim based on fraudulent pretenses, members of the conspiracy directed money to be sent to other members of the conspiracy, including defendants JERRICK ABUEG, ERINJAY MACARAIG, who operated in the Southern District of California and elsewhere.

10.    The defendants and their co-conspirators opened multiple bank accounts with various financial institutions in the Southern District of California and elsewhere for the purpose of receiving proceeds from the fraud scheme.

11.    The defendants and their co-conspirators divided up the fraudulently obtained funds.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2

### (Conspiracy to Commit Money Laundering)

### [18 U.S.C. § 1956(h)]

12.    Paragraphs 1 to 11 are re-alleged and incorporated herein.

13.    Beginning on a date unknown, but no later than March 2024, and continuing up to and including September 2024, within the Southern District of California and elsewhere, defendants JERRICK ABUEG and ERINJAY MACARAIG, did knowingly combine, conspire, and agree with each other and with other persons known and unknown to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit:

a. to knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is wire and mail fraud conspiracy with the intent to promote the carrying on of specified unlawful activity, that is, wire and mail fraud conspiracy, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

b. to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire and mail fraud conspiracy, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of

4

the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

All in violation of Title 18, United States Code, Section 1956(h).

## CRIMINAL FORFEITURE

14. The allegations contained in the Complaint are realleged herein and incorporated as a part hereof for purposes of seeking forfeiture to the United States pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(2)(A), and Title 28, United States Code, Section 2461(c).

15. Upon conviction of the offense set forth in the Complaint, and pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), the defendants shall forfeit to the United States of America all property, real and personal, which constitutes or is derived from proceeds traceable to such property.

16. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 18, United States Code, Section 982(b), and Title 28, United States Code, Section 2461(c)to seek forfeiture of any other property of the defendant up to the value of the property listed above as being subject to forfeiture.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2)(A), and Title 28, United States Code, Section 2461(c).

The complaint states that this complaint is based on the attached Statement of Facts incorporated herein by reference.

_Michael J. Rod_
Michael J. Rod
FBI Supervisory Special Agent

Sworn and attested under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, on March 7, 2025.

Hon. Valerie E. Torres
United States Magistrate Judge

**STATEMENT OF FACTS**

**I.   BACKGROUND**

17.   A **technical support scam**, or tech support scam, is a sophisticated fraud scheme where criminals claim to offer a legitimate technical support service. The criminals contact victims in a variety of ways, including through fake pop-ups resembling error messages or via fake "help lines" advertised on websites owned by the criminals. These criminals use social engineering and a variety of confidence tricks to persuade their victim that there are problems on their computer or mobile device, when there are no actual issues with the victim's device. They will often persuade the victim to pay to fix the fictitious "problems" that they claim to have found. Tech support scams are often combined with other types of scams, such as a refund scam or a government impersonation scam to extract additional funds from the victim.

18.   A **refund scam** is a sophisticated fraud scheme where criminals will use social engineering techniques first to gain the victim's trust, then to convince the victim that they have accidentally received an over-refund, a portion of which the victim is instructed to return. This often occurs through social engineering where the victim is told they are entitled to a small refund, for example, from a retailer for an alleged unauthorized charged. While pretending to process the refund, the victim is accidentally "over-refunded" money. The criminals will then instruct the victim to send the alleged over-refunded money through wire transfers, express mail delivery, or other cash equivalents to the criminals. In reality, the victim has not received any money, and the victim ends up sending their own money to the criminals.

19.   A **bank impersonation scam** is a fraud scheme where criminals pretend to be a bank employee for the purpose of directing the victim

to transfer funds from out of the victim's bank account to the criminals. In some bank impersonation cases, the criminals inform the victim that his/her bank accounts have been compromised or identities have been stolen and direct the victim to transfer the victim's money elsewhere for safe keeping. The criminals then direct the victim to send funds to accounts controlled by the criminals or to purchase precious metals and to deliver that money to the criminals.

20. **Remote desktop software** is a category of commercially available software that allows one individual to remotely access the computer of another individual. Many of these types of software can be downloaded freely over the internet as trial software. Individuals involved in tech support scams frequently use remote desktop software combined with social engineering techniques to get victims to give the scammers viewing privileges or remote access to the victim's computer.

21. **FBI Internet Crime Complaint Center ("IC3")** is an online government portal where an individual or an individual's representative who has been the victim of cybercrime can file a complaint reporting the criminal activity to the FBI. IC3 involves four main categories of criminal activity, including business email compromise, ransomware attacks, elder fraud, and other cybercrime. The IC3 database can help investigators identify other victims of a fraud scheme beyond those initially identified.

## II.  INVESTIGATION BACKGROUND

22. Since October 2024, the FBI has been investigating a sophisticated fraud scheme where unsuspecting elderly victims are contacted in a variety of ways by the targets of this investigation (the "conspirators"). Once a victim is in contact with the conspirators, the conspirators utilize a variety of often pre-scripted scams and social

engineering techniques to gain the victim's trust. With the victim's trust obtained, the conspirators further use social engineering techniques to defraud the victim into sending money to the conspirators as part of tech support, refund, and bank impersonation scams.

23. During the investigation, the FBI has identified defendant JERRICK ABUEG, dba "DIGIWORKS," and ERINJAY MACARAIG, dba "BLISS TOUR," as participants in this fraudulent scheme. The defendants and other co-conspirators receive money from victims of fraud and thereafter conduct financial transactions designed to conceal or disguise the nature, location, source, ownership or control of the fraudulent proceeds. Specifically, these financial transactions include rapid transfers of fraud proceeds to other accounts under the control of the defendants, repeat cash withdrawals below reporting requirements, and international wire transfers to bank accounts controlled by foreign-based conspirators.

**Victim-1 and Victim-2 - Identification of ABUEG and DIGIWORKS**

24. Victim-1 is an 85-year-old resident of New York who fell victim to a tech support and refund scam. Victim-1 lost approximately $80,000.00 in the fraud scheme. On September 17, 2024, Victim-1's daughter filed an FBI IC3 complaint documenting the incident and a fraudulent wire transfer of $50,000.00 as part of this fraudulent scheme. The FBI has confirmed the details of the IC3 report directly with Victim-1 and learned that Victim-1 also provided cash to a messenger sent by the scammers on three separate occasions.

25. According to the FBI IC3 complaint, as confirmed by Victim-1, Victim-1's computer was allegedly hacked, which was allegedly detected by Microsoft. Victim-1 spoke to "Sean" who purported to be an employee of "Digiworks" and who represented that he was going to assist Victim-

1 on Microsoft's behalf. Sean informed Victim-1 that there was a $150.00 credit to be refunded to Victim-1; however, Sean informed Victim-1 that $50,000.00 was accidentally refunded into Victim-1's account. Sean directed Victim-1 to return the over-refund via wire transfer to Digiworks' account. On September 16, 2024, Victim-1 wired $50,000.00 to a PNC bank account ending in 9916 ("PNC-9916").

26. Based on my training and experience, I believe Victim-1 was defrauded as part of a tech support and refund scam into sending $50,000.00 to PNC-9916.

27. A review of PNC bank records revealed that PNC-9916 is a business checking account in the name of Digiworks and was opened with an initial $150.00 cash deposit on May 13, 2024. The signer for PNC-9916 is listed as "Jerrick Caesar Abueg" (ABUEG), and the address listed in the account opening documents was "Digiworks, at an address in San Diego, CA ("Address-1"). California DMV records revealed a valid California Driver's license for ABUEG at Address-1, which is in the Southern District of California.

28. A review of PNC-9916 records revealed that upon receipt of Victim-1's funds on September 16, 2024, the account was immediately depleted through an ATM withdrawal, debit purchase, and an international wire transfer to Xin Shi Dai International Co. Ltd. Based on my training and experience, I believe each of these transactions was designed to conceal the source, origin, control of the proceeds of fraud. A flow chart demonstrating the flow of Victim-1's funds is below:



29. The PNC bank records also contained the wiring instructions for the September 16, 2024 international wire in the amount of $39,862.00 from PNC-9916 to China-based Xin Shi Dai International Co. Ltd. The PNC bank records confirmed that PNC identified its client "Digiworks" by ABUEG's driver's license. Additionally, the PNC bank wiring instructions listed phone number 619-218-1189 ("TEL-1189") as the client's phone number.

30. Victim-2 is an 81-year-old resident of South Carolina who fell victim to a tech support and refund scam. Victim-2 lost $89,000.00 in the fraud scheme. On August 16, 2024, Victim-2 reported the incident to FBI IC3. According to the FBI IC3 complaint, Victim-2 was using a computer when a voice command and a pop-up directed Victim-2 not to turn off the computer. Victim-2 believed it was related to a worldwide network breach associated with CrowdStrike's faulty software update. CrowdStrike is a cybersecurity technology company based in the US. A telephone number was included in the message to coordinate a software update, and Victim-2 contacted the number. Victim-2 spoke to a fake customer service representative named "Steven" and provided Steven remote access to Victim-2's computer. At Steven's direction, Victim-2 paid for a software

1  update with a credit card. Steven informed Victim-2 that the update was
2  not compatible with Victim-2's computer and offered to refund Victim-
3  2's funds.

4    31.  Victim-2 was instructed to type the amount of the refund,
5  $900.00, onto an alleged online refund form; however, Steven informed
6  Victim-2 that $90,000.00 was accidentally refunded to Victim-2's
7  account. Steven instructed Victim-2 to write a check payable to Digiworks
8  in the amount of $89,000.00 and identified a Wells Fargo Bank account
9  ending in 3545 ("WFB-3545") for the deposit. In the memo line, Victim-
10  2 was instructed to indicate the funds were for a "Seed Investment" and
11  was provided the name "Jerrick Abueg" (ABUEG).

12    32.  On July 19, 2024, Victim-2 took check #9641, made out to
13  Digiworks in the amount of $89,000.00, to a Wells Fargo Bank and provided
14  it to the teller. Victim-2's check was processed the same day and
15  deposited into WFB-3545. A redacted copy of the check is included below:



23    33.  A review WFB-3545 records revealed that it is a business
24  checking account in the name of "Digiworks" opened with an initial
25  $100.00 deposit on May 9, 2024. The account opening documents for WFB-
26  3545 identified TEL-1189 as the business phone number and a San Diego,
27  CA address ("Address-1") as the business address. ABUEG was identified

12

as the only authorized signer to WFB-3545, and the signer information included ABUEG's date of birth, social security number, and the Address-1 address.

34.   A review of WFB-3545 records revealed that Victim-2's funds of $89,000.00 were deposited into WFB-3545 on July 19, 2024 and combined with funds from Victim-8[1] and another suspected but unconfirmed victim. These funds were immediately depleted via ATM withdrawal; online transfers to ABUEG's Wells Fargo account ending in 3256 ("WFB-3256"); two $25,000 international wire transfers to Xin Shi Dai International Co. Ltd.; and payments to Company A and Company B, which appear to be telecommunications service companies.   Based on my training and experience, I believe each of these transactions was designed to conceal the nature, location, source, and control of the proceeds of fraud or to promote the underlying mail and wire fraud scheme.   Specifically, I believe that the payments to Company A and Company B were reinvested to promote the underlying fraud scheme.

35.   Victim-8 was identified through a review of WFB-3545 records and was interviewed by the FBI on February 19, 2025.   Victim-8 is an 84-year-old victim from Pittsburg, CA that mailed a check in the amount of $39,800.00 that was subsequently deposited into WFB-3545 on July 18, 2024.   Victim-8 recalled being a scam victim and mailing a check as part of the scam; however, Victim-8 could not otherwise recall the details of the incident.   Like Victim-2, Victim-8's check also included the phrase "seed investment" and listed ABUEG's name in the "For" section. The flow chart below shows the flow of funds from Victim-2 and Victim-

---

[1] Note that confirmed victims that have been previously identified in other legal process in this case have been assigned a victim number to protect their identity.   The victim number remains consistent throughout the various legal process for ease of tracking by the FBI.

8 to ABUEG's bank accounts, along with the flow of funds from a suspected but unconfirmed victim. The suspected victim is an 82-year-old from Fairview, TX that made a $8,300.00 cash deposit directly into the same WFB-3545 account on July 19, 2024. My belief that this individual is likely a victim of the fraud scheme is buttressed by his age and the timing of the transaction.



**Victim-3 and Victim-4 - Identification of MACARAIG and BLISS TOUR**

36. Victim-3 is a 77-year-old resident of Kansas who fell victim to a refund scam. Victim-3 lost $29,800.00 in the fraud scheme. The Anderson County Sheriff's Office located in Garnett, KS referred a crime report to the FBI that detailed the incident and the loss amount. According to the Anderson County Sheriff's report, Victim-3 was at home playing solitaire on a computer when a pop-up advertisement appeared. The advertisement offered $30.00 if Victim-3 provided personal information to the website. Victim-3 responded to the ad and later received an email indicating that Victim-3 was mistakenly sent

$30,000.00. Victim-3 was directed to send a personal check in the amount of $29,800.00 and advised that Victim-3 could keep $200.00 to compensate for the mistake. As directed by the unknown scammer, Victim-3 mailed a personal check payable to "Bliss Tour" to "Erinjay Macaraig at a San Diego address ("Address-2"), which is in the Southern District of California.

37.  The Anderson County Sheriff's Detective confirmed that Victim-3's personal check in the amount of $29,800.00 was deposited at a Mission Federal Credit Union ("MFCU") in National City, CA on July 15, 2024. A review of MFCU records confirmed the deposit of Victim-3's check into MFCU account ending in 7306 ("MFCU-7306").

38.  A review of MFCU-7306 records revealed that it is a sole proprietorship business account in the name of "Bliss Tour." MFCU-7306 was opened on June 4, 2024 with an initial cash deposit of $200.00. The account application is hand-written. The MFCU-7306 account opening documents also listed MACARAIG's email as ejmacaraig//hotmail.com and identified his telephone number as 619-888-2418 ("TEL-2418"). The type of business was listed as "Traveling" and the purpose identified for electronic transactions was "Payments for wedding venues." The signer was identified as "ErinJay A. Macaraig" and the address listed was at Address-2. California DMV records revealed a valid California Driver's license for MACARAIG at Address-2.

39.  A review of MFCU-7306 records confirmed that Victim-3's funds of $29,800.00 were deposited into MFCU-7306 on July 15, 2024 and combined with funds from another suspected but unconfirmed victim: a 75-year-old suspected victim from Warren, ME deposited a check in the amount of $24,100 into MFCU-7306 on July 12, 2024. These funds were depleted via multiple payments to Company A. Additionally, on July 24, 2024, there

was an attempted international wire in the amount of $35,000 from MFCU-7306 to Xin Shi Dai International Co. Ltd.; however, the international wire was rejected and returned the same day. On July 25, 2024, the balance of MFCU-7306, $37,939.26, was paid to MACARAIG via a cashier's check that he picked up in person at MFCU. Based on my training and experience, I believe these transactions were designed to conceal the nature, location, source, and control of the proceeds of fraud or to promote the underlying mail and wire fraud scheme.

40. A flow chart demonstrating the distribution of Victim-3's funds, including a photograph of MACARAIG picking up the cashier's check on July 25, 2024, is shown below. Like ABUEG, MACARAIG also used proceeds of fraud to make payments to Company A, and he attempted to wire funds internationally to Xin Shi Dai International Co. Ltd.



41. Victim-4 was identified through a review of bank records for MFCU-7306. Victim-4 is an 82-year-old resident of Texas with memory

issues. Victim-4 lost $89,940 in the fraud scheme. On November 20, 2024, the FBI contacted Victim-4's son who informed the FBI that the incident was discovered when he (Victim-4's son) was assisting Victim-4 with finances and located two large checks written by Victim-4 on June 21, 2024. Victim-4's son confirmed that Victim-4 had memory issues and had recently experienced cognitive decline. Victim-4's daughter-in-law reported the incident to the Harris County Constable Office on July 1, 2024, and the incident was documented in a report.

42. According to the Harris County Constable report, during the evening hours on June 21, 2024, two young adult males came to Victim-4's residence and asked for a donation. Victim-4 advised that he suggested giving them $100,000.00 dollars; however, the males told Victim-4 that they could not take a check for that amount, and it would need to be split. According to the report, Victim-4 wrote two checks, one for $44,900.00 dollars and the other for $44,400.00[2] dollars. Victim-4 could not remember anything else about the incident.

43. A review of MFCU-7306 records confirmed that Victim-4's check #1162 in the amount of $44,040 was deposited on June 22, 2024. The funds were subsequently depleted via a July 3, 2024, international wire transfer in the amount of $31,000 to Xin Shi Dai International Co. Ltd, as well as cash withdrawals made on July 3 and 5 2024. A copy of Victim-4's check #1162 is depicted below (victim name, address, and account number redacted):

---

[2] The FBI has obtained copies of the checks from Victim-4's son and have confirmed that check #1162 ($44,040.00) was deposited into MFCU-7306 and that check #1227 ($44,900.00) was deposited into an account in the name of "Bliss Tour" at Bank of America. The amount listed in the Harris County report ($44,400.00) is incorrect.



44. A review of Victim-4's check #1227 revealed that it was deposited into a Bank of America account, which led to the identification of a Bank of America account in the name of "Bliss Tour" opened by MACARAIG. Victim-4's check #1227 ($44,900.00) was deposited into Bank of America account ending in 9408 ("BofA-9408"). A review BofA-9408 records revealed that it was opened on April 1, 2024 in the name of "Bliss Tour." Bank of America records confirmed that the account is associated to MACARAIG, the Address-2 address, and telephone number TEL-2418. A copy of Victim-4's check #1227 is depicted below (victim name, address, and account number redacted):

45. A flow chart demonstrating the distribution of Victim-4's funds is shown below. Like ABUEG, MACARAIG also used fraud proceeds to wire funds internationally to Xin Shi Dai International Co. Ltd. Based on my training and experience, I believe each of these transactions was

designed to conceal the nature, location, source, and control of the proceeds of fraud. Further, I believe the cash withdrawals under $10,000 were structured as such to avoid reporting requirements that are triggered with certain transactions over $10,000. In my experience, individuals will structure their transactions this way because they believe a single transaction over $10,000 will trigger a reporting event and bring extra scrutiny to their bank accounts.



**Defendants Open Accounts at Same Banks with Same Documentation**

46. The FBI learned that on June 3, 2024, ABUEG opened a MFCU business bank account 91737188 ("MFCU-7788") in the name of "Digiworks," which was opened one day prior to the opening of MACARAIG's MFCU-7306. Additionally, MFCU records for MFCU-7788 and MFCU-7306 revealed that both ABUEG and MACARAIG submitted a "Fictitious Business Name Statement" filed with the San Diego County Recorder in support of their respective MFCU business bank accounts. The Digiworks Fictitious Business Name Statement was filed on March 29, 2024. The registrant's name on the Fictitious Business Name Statement associated with "Digiworks" was "Jerrick Ceasar Abueg" at address Address-1. The Bliss Tour Fictitious

Business Name Statement was also filed on March 29, 2024. The registrant's name on the Fictitious Business Name Statement associated with "Bliss Tour" was "ErinJay Abueg Macaraig" at address Address-2. Photos of the Fictitious Business statements are below:

 

47.  Notably, Address-1 and Address-2 are located in the same zip code in San Diego and are approximately 1.0 miles from one another.

48.  The FBI has identified multiple bank accounts associated with the defendants and known conspirators. The FBI has identified business bank accounts in the name of DIGIWORKS, opened by ABUEG, and BLISS TOUR, opened by MACARAIG, at Bank of America, U.S. Bank, Wells Fargo Bank, PNC Bank, and MFCU. Based on analysis of bank records, I believe the DIGIWORK and BLISS TOUR bank accounts have been used to receive and distribute fraud proceeds, including payments to Company A and wire transfers to Xin Shi Dai International Co. Ltd. To date, the FBI has identified approximately 13 suspected or confirmed victims that have sent or deposited funds into bank accounts controlled by ABUEG or MACARAIG for a loss amount of approximately $769,550.00. Based on my training and experience, as well as my participation in this investigation, I believe that ABUEG and MACARAIG also used multiple bank

accounts from different financial institutions to conceal the nature, location, source, and control of the fraud proceeds.

### Defendants and Conspirators in Telephonic Contact

49. T-Mobile and AT&T records obtained by the FBI revealed that telephone number TEL-1189, believed to be used by ABUEG, and telephone number TEL-2418, believed to be used by MACARAIG, were in contact with one another during the date range of the conspiracy. Additionally, both phone numbers were in contact with other phone numbers used by members of the conspiracy during the date range of the conspiracy.

## III. CONCLULSION

50. Based on my training and experience, I believe the defendants participate in a conspiracy to defraud elderly Americans using wire communications, wire transfers, mailed checks, and bank deposits. Once a victim is defrauded into sending money to the defendants, the defendants conduct a series of financial transactions, including the transfer of money to other bank accounts controlled by the defendants. The defendants also make numerous cash withdrawals. Based on my training and experience, I believe these transactions are intended to conceal the nature, location, source, and control of the proceeds of the fraud scheme. The conspirators also conduct numerous financial transactions that are intended to promote the underlying fraud scheme.

51. Based on a preliminary analysis, the FBI conservatively estimates that there are at least 393 victims and over $23 million in victim loss linked to the overall conspiracy.